Rodriguez-Molinero v. Lynch. Ms. Espinosa. Good morning, Your Honors, and may I please the court. My name is Carla Espinosa and I'm representing the petitioner, Herr Rodriguez-Molinero. At issue here is whether an agency, the Executive Office of Immigration Review, may deny a man's request for protection under the Convention Against Torture by failing and ignoring to consider material evidence in the record and misapplying the law. Petitioner is asking you to hold that that an agency cannot do, particularly in a case such as this one where a man's life is at risk. The factual basis for the claim and the procedural history is quite long, but the short version of the undisputed facts, in fact it's not an issue for review, is that Petitioner Molinero was tortured by police officers at the direct request of the Setez if he ever disclosed information about the cartel or if he ever failed them. During that encounter, he also said how police officers murder people at the direct request of the Setez cartel for being snitches, for disclosing information about the cartel. Is it correct that he owes $30,000 to the Zetas? Yes, Your Honor, that's his calculation. He acknowledged that the last time he spoke to a member of the Setez cartel, the person said that he owed $15,000. After that, he asked for credit of half a pound of drugs, and he was given an additional 10 ounces. So he calculates, based on the prices at the time, that he owes $30,000. That would be without interest, and that would be at the time. So did they set a deadline on when he had to pay that money? Implicitly, yes. The last encounter that Petitioner had with a Setez member by the name of Jose, he requested that half a pound for him to be paid on the $15,000 plus that, as soon as possible. And Jose gave him even another 10 ounces. You're saying $15,000 as soon as possible, and the rest later? Is that what you're saying? No, the purpose was that, with the additional 10 ounces, he would try to make Jose ask him to sell that as well, so that he could pay him full. That was the... Wait, I'm lost. He still owes $30,000, doesn't he? Correct. Has he paid any... So he hasn't paid any part of it. At all. Is there a deadline? I mean, have they told him by when he has to pay the $30,000? There was no said deadline, Your Honor. But at the same time, at the time, there was no expectation that he would be caught by U.S. law enforcement, Your Honor. And so... Are you afraid if he goes back, they're going to get after him because he owes $30,000? Not just because he owes $30,000, Your Honor, because he disclosed information about the Setas to American law enforcement, and that's well documented in the record to the DA and the FBI. So he's a snitch and a deadbeat. Is that the idea? Yes, Your Honor. And that's enough to get you murdered? That is enough to get you murdered by the Setas cartel? His uncle was murdered? His uncle? His uncle was murdered, Your Honor, yes. And what had he done? Was he a snitch or...? No, Your Honor. He was murdered as retaliation against a petitioner. When they went to look for the petitioner, they only found his uncle. They kidnapped the uncle and then called, asking for information directly on petitioner by name. Was the notion that by killing the uncle, that would make it more likely that Rodriguez Molinero would pay the $30,000? No, it would make it more clear to the family members that they better give information on where the petitioner is so that they could find him and charge him and kill him. Oh, I see. So it would give his family an incentive to find him, lest they all get bumped off. Or to disclose information of his whereabouts. Correct. Well, it's my understanding, based on the country reports and the experts' report, etc., that this is one way that the Setas enforced discipline, cartel discipline, is that they use these various forms of violence, torture, and killings, and through, among other means, corrupt police officers to maintain discipline within the cartel. So it's not just, I mean, it is specific to your client, but it's also widespread, which I think is part of your claim as well, that the immigration judge in the V.A.A. did not acknowledge that. Correct, Your Honor. There's two points to be made regarding that. First, that aside from general torture for transgressions, we can call it, within the cartel and people associated with the cartel in any way, there's a specific, we can call it modus operandi, of killing informants, or snitches, or anyone who discloses information about the cartel. In the record, we submitted, aside from the evidence that Your Honor has mentioned, articles about how people were beheaded for posting blogs online about the cartel. So it is even more directly towards my client that by disclosing information, he's marked for death. So it's not, aside from the court and the V.A.A. not considering, that generally, well-proven by this record, and by anyone who knows anything about the Zetas cartel, that any transgression does not go unpunished, because that's how they thrive, that's how they show their power. Because he's now considered to be an informant, he's certainly marked for death. In another case, though, there's something about the Zetas that they are, they're not everywhere, they're limited to certain geographical spots, and that there may be places in Mexico he can go back without having any problems. I think Your Honor might be referring to the recent decision that Your Honor wrote, Reyes-Mendez, on November 4th. I read the decision, and I want to make abundantly clear the big differences between that case and this case. First, that case related to withholding. The requirements for withholding are different, and when withholding is based on fear of future unreasonable. It's a statutory requirement. For cat deferral, however, that is not a requirement. And it's important to know that even for withholding, when it's based on past persecution, or the alien can successfully show past persecution, the burden is on the government to show. And in this case, the government showed nothing. In fact, that is one of the main points. The expert testimony, along with all the information in the record, shows that the government stipulated to actually shows a relocation in this case would be unreasonable. The expert talks about that. Regarding the great and very efficient military-style network that the Zetas has created, so although there might not be bodies in the entire Mexican territory, the network allows them to find, locate, and murder people that they consider to be informants. And so in that sense, Your Honor, it's very different. First, for the relief that my client is seeking, that is not required, and the evidence in the record that was stipulated to by the parties, by the government, shows that relocation will not be possible. And therefore, that's not an issue here. Second, regarding the likelihood of future torture, we believe that, obviously, considering the record as a whole is clear, but this court doesn't even have to go that far, because it's very easy to see how the immigration court and the B.A. ignore material evidence in the record. Again, the expert testimony alone, which is stipulated to by the parties and therefore binding upon the court as a factual, consensual fact, states that there's a policy of serial tolerance, that if you disclose information about the cartel and they deem that you've transgressed upon them in any way, they have very long memories, and their modus operandi is to not forgive or forget what you've done. That was petitioner's expert, but that's not the only expert opinion that was submitted for the court to consider. We submitted a second expert, scholar, professor George Grayson, which this agrees. He says that the modus operandi of the sentas is never to forgive or forget, regardless of the passage of time. And time is the only apparent reason, in her very short analysis, that the immigration judge identified for believing that future torture was to some degree speculation. Was Jose still a necessary party to threaten her? Your Honor, the sentas cartel is an organization. There's many parties, many members, but it's nonetheless an organization. Once you've damaged that cartel, any part, any member within that cartel has the power. I do want to talk briefly about acquiescence, Your Honors. I think that alone is also a reason why the order must be vacated in reverse. The judge acknowledged past torture and that that had been done by hands of police officers, but she said those could be rogue officers. And in doing so, she basically exemplifies how misguided her analysis is, because the letter of the law, Article I of the CAT Convention, and the implementing regulation, says the analysis is whether a public official or a person with official capacity would consent or acquiesce. A public official, a person, singular. The letter of the law mandates that a rogue officer is sufficient to establish acquiescence, particularly when, as this Court has repeatedly held, the analysis is not whether there is one or many officers that would consent, but whether the government as a whole can prevent it. So, it's the ability to prevent and its effectiveness. So, it is clear by her analysis that she was holding the petitioner to a standard that doesn't exist under the law. The law says rogue officers are enough so long as the government can't prevent the torture that they're inflicted upon people. Well, even setting aside that distinction, which is an important legal one, we've got record evidence in the form of the expert's report about widespread corruption and co-option of local police departments by the Zetas, that these local police departments and their officers are captive of the cartel. And that's how they operate on a widespread basis. And that's exactly our concern, Your Honor. Even within the expert's report and human rights report and American-generated reports, it's clear that the current administration, under President Peña Nieto for Mexico, acknowledged that military forces and police officers had engaged in torture on behalf of the cartels. So, when the Mexican government is telling the Court that they acknowledged the security forces, she's in no position to ignore that. What expertise does she have more than that of the expert and the government of Mexico acknowledging it? That is material evidence that she ignores, and for that reason, she must be reversed. Finally, I do want to make a point as to her main reason for not finding acquiescence. And I'll end my opening argument with that. That is the deployment of military. Well, everything in the record shows how the deployment of military actually increased torture by security forces and cartels, because the military was actually acting on behalf of the cartels, as well as police officers. So, when the piece of evidence that she relied on is not even fully recent, this Court has held that it cannot be considered that it's clearly ignored and not properly recent. For those reasons, Your Honors, we're asking that you grant Mr. Molinaro's petition for review. Thank you, Ms. Espinosa. So, Mr. Padandre? May it please the Court, my name is Tony Padandre, and I represent the government in this manner. I'm going to begin by just addressing a couple points made by counsel. With respect to the stipulation, the government's view is that while the government did stipulate to the admission of that affidavit, and as well as the other expert testimony, most certainly we did not stipulate that it was necessarily true, nor does the stipulation require the immigration judge to rule in the petitioner's favor on account of that evidence. Well, you didn't put anything in to contradict it, and by stipulating to it waived cross-examination of the expert to try to undermine what she said in the report. It is correct, Your Honor. We did, by stipulating, waive cross-examination. However, the relevant legal standard is that the IJ makes an individualized determination based on not only that evidence, but all the other evidence, including petitioner's testimony. Right, but it stands uncontradicted in the record, and the IJ didn't do anything to address it. That's correct, Your Honor. Neither did the BIA. That's correct, Your Honor. How is that not alone enough to grant this petition? Because under the CFR, country condition evidence is one factor, but it's not the only factor. You look to... It's very significant evidence in the petitioner's favor. It is evidence in his favor, Your Honor. However, his individualized case, where we have evidence that's also not in his favor, specifically that he returned to Mexico on his own volition based on the evidence after the incident in the hotel room with the police officers, that that... He was trying to pay off the debt. Your Honor, in the record, his motivation was to obtain more narcotics as well as... So that he could sell it to pay off the debt. That was his motive, Your Honor, but it doesn't require the IJ in this case, under the deferential substantial evidence standard, to... Right, but you're trying to spin it as some sort of a marker that he really didn't fear Jose or the cartel, and I'm not sure it bears that interpretation under the totality of the circumstances. Respectfully, Your Honor, that is our interpretation of the... Well, now, how could he not be in fear when he owes them $30,000? Your Honor, the IJ, in his decision, acknowledged that he had fear. The government's not... That he had what? Acknowledged that Jose had... Excuse me, that petitioner had fear. He found him credible in some of his account. However, that's not the same as that he more likely than not would be tortured. Now, wait a second. Where does this more likely than not come from? The CFR? Yeah, well, it doesn't make any sense, does it? I would disagree, Your Honor. Oh, you do? Now, suppose you have a 51% chance of being killed if you're sent back to Mexico. Then you're not sent back, right? If you... That's what more likely than not means, doesn't it? Yes, Your Honor. Now, what if you have a 49% of being killed if you're sent back to Mexico? 49% chance of being tortured or killed? Yeah, 49% instead of 51%. Your Honor, that is the test in that scenario. That's what? In that scenario, Your Honor, if a IJ determined... I don't know if they ever would, but would say, okay, you're only 49% likely to be tortured or killed. Under the laws that is now, he would not be entitled... That is ridiculous and any regulation which says that is invalid. What if I said to you, you take an elevator in this building, you have 49% chance of being killed. You'll say, oh, well, I have a lesser chance of being killed than of survival. I'm fine, I'm fine, right? Well, Your Honor, I think it's important... Look, isn't it nonsense to say that someone who only has a 49% probability of being killed cannot appeal to the Convention Against Torture Act? Well, you're going to defend that? Yeah. Your Honor, my position in defending the agency, which applies to... I'm asking you what you think. You're asking me in my personal capacity, Your Honor? Yeah. You think it makes any sense to have that kind of distinction between a shade over 50% and a shade under? Personally, Your Honor, I think the best approach is an individualized determination, which I still think is what... Of what? Of more likely than not? Of that person's risk based on the facts surrounding his life. And I think that's what the IJ and the board did here in looking at... The IJ didn't quantify it. Well, more likely or less likely than not. So you think that's good? So if the immigration judge said 49%, that's less than 50%, therefore you go back, right? That's what the regulation suggests. You're endorsing that? You think that's a civilized rule? Your Honor, I realize... How do you feel about having a 49% probability of death? Your Honor, respectfully, I realize I'm not going to convince you on this point. Well, what do you think? I'm asking you whether you actually agree with that regulation or whether you're just defending it because you think it's your job. Do you agree? Do you agree it's the right test? 51%, you're not sent back. 49%, you're sent back. Your Honor, personally, I would never put numbers on something so serious. I would look at all the facts and make the best judgment I could based on what was in front of me. And that would not be my approach, Your Honor, personally. Let me ask you a different question. The immigration judge seems to think that the government has to be acquiescent in torture. But that's not the law. It's the individual public officer. It doesn't have to have the acquiescence of the government. You're correct, Your Honor, there can be... Why did the immigration judge say that then? I think, Your Honor, his analysis was that they would not... He's talking the government as a whole. I don't think... Yeah, but he's not supposed to do that. You don't have to have the government as a whole acquiescing. You just need a public official or other person acting in an official capacity, right? Your Honor, I agree that it can... In some cases, a mere low-level actor can get you to acquiescence. In this case, I don't think the judge was absolving what happened in that hotel room. In fact, he specifically... Excuse me, she found it was torture. I would disagree with counsel that, as she put it, he ignored the evidence. I think she acknowledged what happened there. They're not going to forget the 30,000. Well, Your Honor, one of the facts in this case... See, look what the IJ says. The respondent has not demonstrated that it is more likely than not that he will be tortured by or with the acquiescence of the Mexican government. Yes, Your Honor. That's not the right test. Your Honor, it is the acquiescence of the government. It's not my view. No, it's the acquiescence of an individual, of the government. I mean, it depends what you mean by the government. But we don't usually say that a police officer is the government. Yes, Your Honor. He's an employee of the government. Yes, Your Honor. And I would disagree with you respectfully that the IJ using the word government... Am I correct that you're imputing to the IJ that she's ignoring... Acquiescence of the Mexican government suggests that this acquiescence is the result of a decision at the governing level by the people who run the government, not by a police officer. Yes, Your Honor. But again, in the judge's decision saying government, I don't agree that the judge is ignoring... State government or local government. What's the main acquiescence of the Mexican government? Police officer is not the Mexican government. Your Honor, I disagree with your reading of Mexican government. My reading of that, it would be that it includes government officials in Mexico. I realize I'm not going to... It sounds like I'm not going to convince you of that, but that is my take on the IJ's choice of those words. A little bit here. First of all, there's no doubt there's a lot of corrupt police officers. They're bought off by the Zetas and others. Yes, Your Honor. And they get a certain amount of money to... So there's no question there's going to be some number of individuals who are corrupt. And they aren't... I don't call them acquiescent. They're more actively opposed. I assume that you're trying to say that it's the policy of the government. They're going to crack down and do all sorts of other things to try to do something about these cartels running the show. I guess that's what their policy is, whether it's being successful or not. So I guess I have... My problem with acquiescence is that it is kind of a nebulous principle and it doesn't apply to everyone. And I would hesitate to say that just one or two or even a handful of police officers who are corrupt would override that. But that may not work. And then the other thing I'm trying to get the impression is, is that at least the... Well, I guess the board looked at this as not a 15149 case. They thought there really wasn't enough there to show that this guy had a genuine fear of future persecution for the reason that he went back and had a rather benign transaction and when he came back, et cetera, that it subsided. You know, I have a problem with this case, but I'm just... I don't want to see it melt away, whatever the standards are, so that everybody can come back here. And just as some had said early on, just because of the whole atmosphere in Mexico of these cartels and their vicious activity that nobody wants to go back to Mexico. For fear of their life, because even though they haven't been previously involved, we certainly don't want to go that far. And the government's not arguing that, Your Honor, that that would be an overstatement. It would be an overbroad... But we're talking about the cat, which always is pretty high hurdle. It is. And again, to your question, Your Honor, with respect to acquiescence, yes, sometimes a low-level actor, a bad actor, can get you to acquiescence. But in cases where that's happened, that's because in the individualized situation of that particular petitioner, there were facts that compelled that result. Governments view in this case, those facts aren't present. How would you feel about being sent to Mexico if you owed $30,000 to the Zetas? Your Honor, are you asking me in my personal capacity or... Right, in your personal capacity. I mean, of course, I'd be concerned and feared. And I don't deny that. But, you know, in this case, it's based on the facts before the IJ. And again, the IJ didn't say he wasn't afraid, and that he was making this up. He said that he did not have, he didn't meet the threshold for actually being tortured, which is different based on the facts. Subject to your remaining questions, we'll submit on the briefs. Okay, well, thank you very much, Mr. Ponder. So, Ms. Espinoza, your time has expired. If you have anything more, I'll give you a minute. Yes, Your Honor, three brief points. It shouldn't take more than a minute. Aside from what Your Honor read regarding the IJ, mentioning the government, the Mexican government, she also says, these were rogue officers individually compensated by Jose to engage in isolated incidents of brutality, rather than evidence of broader pattern of government acquiescence. So there's two points in her very short analysis in which she's requesting a burden that the petitioner doesn't have under the law, under the letter of the law. Second, the government is now saying that they stipulated, but not really. This court will know that they forfeited that objection. They didn't say we stipulate to parts of the report and not others. They stipulated to the whole thing. And if they were concerned with accuracy, they could have mentioned that to the court and made objections to that end, and they did not. Therefore, that issue is forfeited. Lastly, I want to leave you with one thought. Aside from everything that was submitted, and while he's asking you to consider other evidence in the record, all the evidence in the record was submitted by the petitioner himself. Everything in that record shows that he's libelous at risk. But even more telling is his actual, his actions. He's been detained. He'd rather be at McHenry County Jail for a year and a half than to go back to Mexico because he will be killed. I don't think there's anything more clear than that. Okay. Well, thank you very much, Ms. Espinoza and Mr. Pottinger.